

FILED

OCT 2 2 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 13-23469-E-13 |
| | Docket Control No. DO-1 |
| RONALD ALLAN SHAFER and | |
| JILL ELAINE SHAFER, | |
| | |
| Debtor(s). | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM OPINION AND DECISION

The court has been presented with an Objection to Confirmation of the Chapter 13 Plan proposed by Ronald and Jill Shafer ("Debtors"). Westamerica Bank ("Creditor") and the Chapter 13 Trustee asserts that the proposed plan fails to provide the Debtors' projected disposable income as required by 11 U.S.C. § 1325(b)(1). It is asserted that the Debtors home mortgage, insurance, and tax expense exceed that permitted for over-median income debtors. It is further contended that the Debtors do not provide sufficient income information, and that the Debtors' expenses exceed the amounts allowed for over-median income Debtors pursuant to 11 U.S.C. §§ 707(b)(2) and 1325(b)(3). Proper notice of the Objection was provided pursuant to Local Bankruptcy Rule

9014-1 and 3015-1(c)(4).

Upon consideration of the evidence presented and computation of expenses as mandated by 11 U.S.C. §§ 707(b)(2) and 1325(b)(3), the court determines that the proposed plan payment of $248.00 a month fails to provide all of the Debtors' projected disposable income to fund this plan. Confirmation of the plan is denied.

## OBJECTION TO CONFIRMATION

Creditor opposes confirmation of the Plan on several separate and independent grounds. Creditor asserts a claim arising out of a $150,000.00 commercial loan to Burger City, Inc., which is secured through a Commercial Security Agreement. Creditor states that the corporation pledged as collateral all equipment, accounts, and general intangibles.

Creditor states that Burger City, Inc. is privately held, with the Debtors owning 60% of the outstanding shares and other members of Debtors' family owning the remaining shares. Creditor argues that Burger City, Inc., an insider of Debtors, generates substantial gross revenues which are not accounted for in this case. Creditor's claim against the Debtors is based on a Commercial Guaranty given by the Debtors for the Burger City, Inc. debt to Creditor. Creditor asserts that as of the Petition date the corporation owed $137,566.39 on the loan.

Creditor directs the court to the proposed plan and information provided under penalty of perjury by the Debtors that they will receive $6,400.00 per month from Burger City, Inc. However, on Schedule B Debtors value their interest in this corporation at $0.00.

///

The first basis for objecting to confirmation by Creditor is that Debtors do not have regular income since the corporation distributes $6,400.00 per month to Debtors. Creditor argues that these distributions are not "regular income" since there is no showing that Debtors have or will regularly receive this amount. Creditor argues that since Burger City, Inc. has defaulted on the payment due Creditor, there is no reason to believe Burger City, Inc. can pay Debtors the $6,400.00 per month to fund the proposed Chapter 13 Plan.    Creditor contends that at minimum more information is needed regarding how Debtors will be able to fund the plan.

Second, Creditor argues that Debtors have not demonstrated that they have disposable income to fund the plan since Debtors have not shown that they have signature authority over corporate funds.    This is a variant of the first objection.

Third, building off the relationship between the Debtors and Burger City, Inc., Creditor states that Debtors must submit their future income to the control of the Chapter 13 Trustee.    Absent a transparency in operations, it will be difficult for Trustee to confirm that Debtors are submitting their disposable income to the Trustee over the life of the plan.

Fourth, Creditor states that its claim is unsecured and the plan improperly classifies the claim in Class 2.    Creditor argues that simply because Debtor pledged equipment owned by Debtor to secure the debt of the corporation, does not mean that Debtors' guaranty was secured.    Creditor argues that the plan cannot be confirmed over its objection unless Debtors cure the corporation's default.

Fifth, Creditor argues that the plan relies on a motion to value claim of Wilmington Trust Company set for hearing May 14, 2013. The court's decision is to grant the motion.

Sixth, Creditor argues that the plan may not be Debtors' best effort since Debtors have not provided sufficient information regarding amounts generated by the corporation.

Creditor finally argues that the plan is not feasible.  The plan is funded by income the Debtors expect to receive from Burger City, Inc.  Further, that this assumption is unrealistic given that Burger City, Inc. is not paying its debts as they come due, including the obligation to WestAmerica Bank.  Therefore, Creditor asserts that a plan dependent on continued income from an insolvent corporation is not feasible.

### CHAPTER 13 TRUSTEE'S OBJECTION

The Chapter 13 Trustee filed a Supplemental Brief in Support of Objection to Confirmation pursuant to 11 U.S.C. § 1325(b).  The Trustee asserts that Schedule I states the income of the Debtor at the time of filing and projected for the first year (based on line 17) of the Chapter 13 Plan.  The Trustee further contends that Schedule J similarly states Debtors' expenses at the time of filing and projected for the first year of the Plan.

The Trustee asserts that the Debtor must pay in their projected disposable income if the Trustee or an unsecured creditor objects for the applicable commitment period of the plan. Projected disposable income appears to the amount of Form 22C, Line 59, as modified by the projected changes on Schedule I & J.

///

///

In his analysis of Form 22C, the Chapter 13 Trustee states the Internal Revenue Service standards for California are to be used in examining the housing and utility expenses. The Chapter 13 Trustee notes that the U.S. Trustee website maintains an area where they present these expenses on a current and historic basis, while the IRS does not provide a breakdown of the categories. Form 22C provides to use the US Trustee website and the IRS website provides to use the U.S. Trustee website.

The Chapter 13 Trustee provides an analysis, by which he concludes that the Debtors have failed to provide their projected disposable income to fund the plan for the applicable commitment period. The Chapter 13 Trustee calculates that the Debtors must fund projected disposable income payments of $1,121.00 a month as required by 11 U.S.C. § 1325(b)(1)(B). With a proposed monthly plan payment of only $248.00, the Trustee asserts that the Debtors have underfunded the Chapter 13 Plan by $873.00 a month.

The Chapter 13 Trustee also objects based on the evidentiary record. The petition discloses the Debtors has a DBA of "Burger City, Inc." and FDBA of "Pasta City Express." Schedule B discloses a 60% ownership interest in Burger City, Inc. and a 30% partnership interest in "5.5 acres Browns Valley," valuing both at $0.00. Schedule I discloses income from Burger City, Inc. but no business expenses are listed and the monthly income of Burger City, Inc. is not disclosed.

## DEBTORS' RESPONSE

Debtors argue that 11 U.S.C. § 707(b)(2)(A)(iii)(II) provides for the allowance of "any additional payments to secured creditors necessary for the debtor, in filing a plan under Chapter 13 of this

5

title to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts." Debtors argue that the court is given a level of discretion when it comes to the amounts paid on secured debt necessary to maintain possession of the debtor's residence pursuant to 11 U.S.C. § 707(b)(2)(A)(iii)(II).

Debtors also argue that the Internal Revenue Service is "open" to allowing actual expenses of delinquent taxpayers who show documentation that using the standards leaves them an inadequate means of providing for basic living expenses. Thus, the Debtors contend that the court is not limited by what Congress has provided in this Bankruptcy Code Section, but has the ability to allow whatever expenses the court believes that the Internal Revenue Service would allow.

The Debtors seek to distinguish *Drummond v. Welsh*, 711 F.3d 1120 (9th Cir. 2013), from the present case on the basis that the Debtors have no social security income, have no secured debts other than their residence and Creditor, and have a total unsecured debt of $26,100.00 (excluding Creditor's unsecured claim). Additionally, Debtors point out that the *Drummond* court did not address a situation of whether those debtors' mortgage payment exceeded the amount specified under the IRS Standards for housing expense applicable in Montana.

Debtors contend that they believe they prepared their Means Test accurately, save for a minor difference of $30.00 on their income tax amount - line 30 - which should be $928.00 not $958.00. Debtors also argue the alleged "excessive" expenses of $873.00 are

6

related to their secured housing payment, which "additional" amount is asserted to be specifically provided for in § 707(b)(2)(a)(iii)(II). Debtors state they have accurately and truthfully detailed their income and expenses and are current on their first mortgage. Debtors argue that the mere fact that the residence is worth less than the balance due on the first mortgage does not make the property unnecessary for the debtors' effective reorganization.

Debtors argue that if they are unable to retain their family home, the idea of a fresh start is unattainable, as is the purpose of the Chapter 13 bankruptcy. Debtors premise this on the annual mortgage interest deduction of $13,434.54 for the payments made on their home mortgage. Without providing the tax computation methodology, the Debtors argue in their Response that if they did not have this, their tax withholding per month would be considerably more than the $928.00 currently listed on their Schedule I. The Debtors believe that the withholding, based on their unstated tax bracket, would be at least $1,000.00 more per month.

No tax calculation for this contention has been provided, and the court does not understand how the loss of an interest deduction (for which the Debtors benefit is the incremental tax rate at with the interest deduction is applied) is equal to the total interest payment. However, given that the interest deduction of $13,434.54 averages $1,119.55 a month, the Debtors are apparently contending that their incremental tax rate is 100%.

///

///

With gross income of $7,300.00 a month, and without taking into account any other deductions or credits, the maximum taxable income would be $87,600.00. Using the 2012 tax table for Head of Household for Form 1040, the Debtors federal taxes would be $6,482.50, plus 25% of amounts over $47,350.00. The incremental tax rate for the monies subject to the $13,434.54 interest deduction is 25%, yielding a tax savings of $3,358.64. If the interest deduction was not taken, then the additional federal income tax amount would be only $279.89 a month, not the "more than $1,000.00 a month" postulated by the Debtors. However, the Debtors would have an additional $10,075.90 of cash (the $13,434.54 in monies not used to pay interest, less the $3,358.64 in taxes paid on the monies not paid for interest) to pay necessary expenses or creditors.

Debtors contend that trying to meet the "fictional" payment of $1,121.00 computed by the Chapter 13 Trustee and still retain their home, the Debtors are left with few choices. Mr. Shafer works two jobs and it would be difficult for him to find a third. Mrs. Shafer could get a second job, but they would then need to expend funds for the care of their 11 year old daughter and transportation expenses would increase. However, the Debtors do not consider the apparently unthinkable third alternative – what they would do if they did not try to retain a home, for which the mortgage payment, taxes, and insurance consume 50% of their monthly net income. ($3,121.00 payment/$6,372.00 monthly net income, which does not take into account expenses and taxes for the $900.00 a month in real estate commissions).

Lastly, Debtors argue that although *Drummond* provided insight

into the court's view of the result of Congress' adoption of the means test in terms of reducing the bankruptcy court's discretion to review income and debt payment, it did not address the predicament of debtors whose housing expense exceeds the standards, but who have no secured vehicles to "offset" that excess. The Debtors do not explain how having more secured debt would make the $3,121.00 in payments for their home more reasonable, or feasible.

## DISCUSSION

The Debtors' Chapter 13 Plan provides for a monthly payment of $248.00 for 36 months. The Chapter 13 Plan provides for the $248.00 to be paid as follows:

| | | |
|---|---|---|
| A. | Administrative expenses | $225.00 a month |

    1. Debtors' Counsel to be paid $3,000, which is $83.55 a month

    2. Chapter 13 Trustee expenses projected at 8% to be $20.00 a month

| | | |
|---|---|---|
| B. | Class 1 Secured Claims | No Claims Paid |
| C. | Class 2 Secured Claims | |

    1. Creditor, $4,100 secured claim   $211.35 a month
       506(a)Value of $4,100.00

    2. Wilimington Trust Secured Claim   $0.00 a month
       506(a) Value of $0.00

D.   Class 3 Secured

    1. Surrender of Browns Valley Property to Tax Collector and lien holder.

E.   Class 4 Secured - Direct Debtor Payment

    1. $3,121.00 a month to Select Portfolio Servicing, Inc. for claim secured by 1018 Vintage Court. Claim of $555,331.00 secured by property with a value of $378,000.00. Schedules A and D, Dckt. 1.

| | | |
|---|---|---|
| F. | Class 5 Unsecured Priority | None |
| G. | Class 6 Special Unsecured | None |

9

H.    Class 7 General Unsecured Claim            0.00% Dividend
Plan, Dckt. 5.

On its face, it appears that the $248.00 a month in plan payments is insufficient to fund the $225.00 in administrative expenses and the $211.35 to Creditor.

While Creditor expends time addressing why Burger City, Inc. cannot be a Chapter 13 Debtor, such is not now before the court. What is before the court are two individual Debtors who have an interest in a corporation which employs the Debtors.    The Plan attempts to provide for the secured claim of Creditor, the value of the collateral owned by the Debtors, and the Creditor's unsecured claim.    Presumably, Creditor is enforcing whatever rights it has against the non-bankruptcy debtor entities and the collateral owned by those entities.

Further, Creditor complains that since the Debtors have an interest in a corporation from which they derive their income, that is somehow a *per se* basis for denying confirmation.    Such an assumption is incorrect.    Creditor is free to conduct any and all such discovery in this bankruptcy case as appropriate into the finances of Burger City, Inc. Quite possibly, Creditor already has all of the financial information and could enlighten the court as to whether the $6,400.00 a month in income is reasonable and truthful for the Estate's interest in Burger City, Inc.

**EXPENSES PERMITTED IN COMPUTATION OF
PROJECTED DISPOSABLE INCOME**

In substance, the Debtors seek to confirm a plan which diverts $3,121.00 a month to pay a mortgage on property which is well underwater and is of no economic benefit to the estate.    The

10

$3,121.00 a month appears to be well in excess of what would be a reasonable housing expense for a Chapter 13 Debtor under the Internal Revenue Service Guidelines. The Debtors contend that this expense (which consumes 50% of their monthly net income) is proper because the house is "necessary" for any effective reorganization.

Creditor, which holds a substantial unsecured claim in this case, and the Chapter 13 Trustee have objected based on the Debtors not funding the plan with their projected disposable income and that the plan has not been proposed in good faith, based on the housing expense.

Pursuant to 11 U.S.C. § 1325(a)(3) a plan must be proposed in good faith. Courts apply the totality of the circumstances test in making a good faith determination and consider several factors in determining whether a plan was proposed in good faith, including:

1.  Whether the proposed plan accurately states debtor's secured and unsecured debts;

2.  Whether the proposed plan accurately states debtor's expenses;

3.  Whether the proposed plan accurately states the percentage repayment of unsecured claims;

4.  Whether the proposed plan has deficiencies and whether the inaccuracies amount to an attempt to mislead the bankruptcy court;

5.  Whether the proposed payments indicate a fundamental fairness in dealing with one's creditors.

*In re Powers*, 135 B.R. 980, 994 (Bankr. C.D. Cal. 1991)(citing *In re Smith*, 848 F.2d 813, 818 (7th Cir. 1984). Although good faith in a Chapter 13 proceeding is determined on a case by case basis, a debtor must at minimum show that he or she has an honest intention.  *In re Powers* at 992. One factor courts consider is whether the debtor acted equitably in proposing the Chapter 13 plan

11

and whether a debtor has misrepresented facts in the plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed a plan in an inequitable manner. *Id.* at 992.

Prior to 2005 the bankruptcy judge was given a great amount of discretion in determining a debtor's good faith in proposing a plan and what expenses were reasonable and necessary. However, that changed with the 2005 BAPCPA amendments to the Bankruptcy Code. Congress restricted the court's discretion with respect to above median income debtors with respect to the expenses permitted in computing projected disposable income. In *Drummond* the Ninth Circuit Court of Appeals explains this Congressional limitation on discretion and considering the "totality of the circumstances" for the above-median income debtor.

> In 2005, Congress again revised Chapter 13 when it enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). The good faith requirement under § 1325(a) remained the same, but there were significant changes with respect to the calculation of disposable income. Before the BAPCPA, bankruptcy judges had authority to determine a debtor's ability to pay based on the individual circumstances of each case and each debtor. **Congress replaced this discretion with a detailed, mechanical means test**, which requires debtors with above-median income to **calculate their 'disposable income' by subtracting specific expenses from 'current monthly income,' as defined by the Bankruptcy Code.** For our purposes, several elements of this calculation are important. The debtor begins with his 'current monthly income,' which, by definition, explicitly 'excludes benefits received under the Social Security Act.' **The debtor then subtracts living expenses based on the Internal Revenue Service's 'Collection Financial Standards,'** a detailed series of averages for living expenses that the Service uses to calculate necessary expenditures for delinquent taxpayers. **The debtor also subtracts his averaged payments to secured creditors due during the following sixty months.**
> . . .
> Section 1325 states that disposable income is current monthly income 'less amounts reasonably necessary to be expended— . . . for the maintenance or support of the debtor or a dependent of a debtor.' 11 U.S.C. § 1325(b)(2) (2006). Section 1325 further provides that

12

'[a]mounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2).' 11 U.S.C. § 1325(b)(3) (emphasis added). For its part, section 707(b)(2) provides that current monthly income shall be reduced by '[t]he debtor's average monthly payments on account of secured debts,' 11 U.S.C. § 707(b)(2)(A)(iii); **that section, however, does not include any qualification or limitation on the kind of secured debt that is deducted from current monthly income.** As we recognized in *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 873 n.2 (9th Cir. 2008), overruled on other grounds by *Hamilton v. Lanning*, 130 S. Ct. 2464, 2475, 177 L. Ed. 2d 23 (2010), prior to the BAPCPA,

> '[d]etermining what was 'reasonably necessary' for the maintenance or support of the debtor was dependent on each debtor's individual facts and circumstances. This amorphous standard produced determinations of a debtor's 'disposable income' that varied widely among debtors in similar circumstances. **BAPCPA replaced the old definition of what was 'reasonably necessary' with a formulaic approach for above-median debtors.** 11 U.S.C. § 1325(b)(3).'

**Again, in the BAPCPA, Congress chose to remove from the bankruptcy court's discretion the determination of what is or is not 'reasonably necessary.'** It substituted a calculation that allows debtors to deduct payments on secured debts in determining disposable income. That policy choice may seem unpalatable either to some judges or to unsecured creditors. Nevertheless, that is the explicit choice that Congress has made. We are not at liberty to overrule that choice.
. . .
The calculation of 'disposable income' under the BAPCPA requires debtors to subtract their payments to secured creditors from their current monthly income. **In enacting the BAPCPA, Congress did not see fit to limit or qualify the kinds of secured payments that are subtracted from current monthly income to reach a disposable income figure.** Given the very detailed means test that Congress adopted, we cannot conclude that this omission was the result of oversight. Moreover, even if it were, we would not be justified in imposing such a limitation under 'the guise of interpreting 'good faith.'

*Drummond v. Welsh*, 711 F.3d at 1129-1130, 1133-1135 [footnotes omitted, emphasis added].

///

This court has reviewed Form F22C, the "Means Test Form" filed by the Debtors. Dckt. 1 at 43-49. Under penalty of perjury the Debtors state that they are above median income debtors. As instructed by the Ninth Circuit Court of Appeals, the court considers the calculation of the Debtors expenses, as "cabined" by Congress with the BAPCPA amendments, making the 707(b) calculation.

Neither the Debtors nor the objecting creditor initially provided the court with their computation of this necessary calculation. For the over-median income debtor the Bankruptcy Code requires that the expenses for computing projected disposable income are,

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) **less amounts reasonably necessary to be expended—**
>
> > (A) (I) for the **maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation,** that first becomes payable after the date the petition is filed; and
> >
> > (ii) for **charitable contributions** (that meet the definition of "charitable contribution" under section 548 (d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548 (d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
> >
> > (B) if the debtor is engaged in business, for the payment of **expenditures necessary for the continuation, preservation, and operation of such business.**
>
> (3) **Amounts reasonably necessary to be expended under paragraph (2),** other than subparagraph (A)(ii) of paragraph (2), **shall be determined in accordance with subparagraphs (A) and (B) of section 707 (b)(2),** if the debtor has current monthly income, when multiplied by 12, greater than—
>
> > (A) in the case of a debtor in a household of 1 person, the median family income of the applicable

14

State for 1 earner;

   (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

   (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

11 U.S.C. § 1325(b)(2), (3).

The Debtors being above-median income debtors, the court turns to 11 U.S.C. § 707(b)(2) to determine the reasonable, necessary, and proper expenses for these Debtors in this Chapter 13 case. In pertinent part, 11 U.S.C. § 707(b)(2)(A)(ii) provides,

   (ii)
   (I) **The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards,** and the debtor's **actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief,** for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses **shall include reasonably necessary health insurance, disability insurance, and health savings account expenses** for the debtor, the spouse of the debtor, or the dependents of the debtor. **Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.** In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 302 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

   (II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and

15

necessary for **care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family** (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III)  In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the **actual administrative expenses of administering a chapter 13 plan** for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, **not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards,** or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for **housing and utilities, in excess of the allowance specified by the Local Standards** for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs **if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.**

(iii)  The debtor's average monthly payments on account of **secured debts shall be calculated** as the sum of—

(I)  the total of **all amounts scheduled as contractually due to secured creditors** in each month of the 60 months following the date of the filing of the petition; and

(II) any **additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence,** motor vehicle, or other property **necessary for the support of the debtor and the debtor's dependents,** that serves as collateral for secured debts; divided by 60.

(iv)  The debtor's expenses for payment of all priority claims (including priority child support and

alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

The Debtors request that as part of this formulaic calculation mandated by Congress the court allow special and additional amounts, based on the totality of the circumstances, in excess of the Internal Revenue Service Guideline stated amounts. Congress addressed in § 707(b)(2)(B) when the bankruptcy judge could exercise such discretion for an over-median income debtor.

(B)   (I) In any proceeding brought under this subsection, the **presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces**, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) in order to establish special circumstances, the **debtor shall be required to itemize** each additional expense or adjustment of income and to provide—

(I) **documentation** for such expense or adjustment to income; and

(II) a **detailed explanation of the special circumstances that** make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall **attest under oath to the accuracy of any information** provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (I) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

(II) $10,000.

11 U.S.C. § 707(b) [emphasis added].

Congress has directed that the secured debt payments are "reasonable" if they are the contract amount. 11 U.S.C. § 707(b)(2)(B)(iii)(I). For these Debtors, that is the monthly contract payment of $3,121.00. It is not the court's discretion to determination that such amount (equal to 50% of the Debtors' monthly net income) is unreasonable.

## COMPUTATION OF PROJECTED DISPOSABLE INCOME

Both the Chapter 13 Trustee and Creditor have objected to the proposed monthly plan payments. With such objection, pursuant to 11 U.S.C. § 1325(b)(1)(B) this Plan must provide for payment of all of the Debtors' monthly projected disposable income.

The Trustee raises an objection that the Debtors' income does not sufficiently take into account the monies they should be receiving from Burger City, Inc., if it is a viable entity. Schedule I filed by the Debtors provides income information under penalty of perjury. The Debtors state that they have gross wage income from Burger City, Inc. of $7,400.00 a month. From this $928.00 a month is withheld for payroll and Social Security Taxes. This is 12.5% of the gross income, with does not appear to be an unreasonably high withholding amount. Mr. Shafer also states that he has an average of $900.00 a month in real estate commissions. No separate expenses are shown on Schedule J for income taxes, self-employment taxes, or expenses for this real estate business.

The court has constructed the chart below to identify the expenses at issue, the Debtors' statement of expenses, and the expenses permitted pursuant to § 707(b)(2).

///

| Expense | Schedule J Used To Compute Projected Disposable Income | IRS Expenses Allowed for 3 Persons, § 707(b) (November 2012 - March 31, 2013 filed cases - Solano County, California) | Expense Under/(over) § 707(b) allowed amount | |
|---|---|---|---|---|
| Mortgage, Including Property Taxes and Insurance | $3,121 | $3,121 | $0 | Statutory Amount Require Pursuant to 11 U.S.C. § 707(b)(2)(B)(iii) (I). |
| | IRS Housing and Utilities standards include mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, telephone, cell phone, internet, and cable. | | | |
| Electricity | $250 | $500 | $250 | Non-Mortgage Utilities Standard |
| Water, Sewer | $105 | Included Above | ($105) | |
| Telephone | $180 | Included Above | ($180) | |
| Cable, Land Line, Internet | $120 | Included Above | ($120) | |
| Home Maintenance | $100 | Included Above | ($100) | |
| Additional Household Supplies | | $65 | $65 | |
| Food | $700 | $639 | ($61) | |
| Clothing | $125 | $209 | $84 | |
| Additional 5% Permitted for Food and Clothing | | $42 | $42 | |
| Laundry, Dry Cleaning | $0 | | | |
| Medical, Dental | $100 | $180 | $80 | |
| Personal Care Products & Services | | $63 | $63 | |
| Transportation | $500 | $612 | $112 | |
| Auto Insurance | $300 | Included | ($300) | |

| | Schedule J | 707(b) Expenses | Additional/ (Excessive) Expenses | |
|---|---|---|---|---|
| Recreation | $150 | | ($150) | |
| Charitable | $50 | $50 | $0 | |
| Life Insurance | $163 | $163 | $0 | |
| Vehicle Registration | $30 | | ($30) | Included in Transportation Expense |
| Miscellaneous | | $251 | $251 | |
| School Activities | $130 | Included Above | ($130) | |
| | | | | |
| Total | $6,124 | $5,895 | ($229) | |

Even without addressing the actual, reliable Burger City, Inc. income, the Debtors run afoul the mechanical computation of expenses and disposable income under § 1325(b)(2), from which projected disposable income is generated. *Hamilton v. Lanning*, 560 U.S. 505, (2010); *Drummond v. Welsh*, *supra*. As show by the chart above, applying the mechanical computation methodology mandated by 11 U.S.C. § 707(b)(2) and allowing for the contract secured payment, the Debtors' expenses exceed the allowed amount by $229.00 a month.

With net income of $6,372.00 a month (this is consistent with the Form 22C stated income) and § 707(b) expenses of ($5,895.00), the court computes the net projected disposable income to be $477.00 a month. The Debtors have not presented the court with a sufficient basis for further increasing the expenses to the extent permitted under 11 U.S.C. § 1325(b)(2)(B). The Chapter 13 Plan presented to the court provides for payment of only $248.00. Plan, Dckt. 5. This under funds the Plan by $229.00 a month.

1    The proposed Chapter 13 Plan does not comply with the
2 requirements of 11 U.S.C. §§ 1322 and 1329, and the motion is
3 denied.

4    This Memorandum Opinion and Decision constitutes the court's
5 findings of fact and conclusions of law pursuant to Federal Rule of
6 Civil Procedure 52 and Federal Rules of Bankruptcy Procedure 7052,
7 9014.  The court shall issue a separate order consistent with the
8 Decision.

9 Dated: October 22, 2013

10
11
12
          RONALD H. SARGIS, Judge
          United States Bankruptcy Court

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

      Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __XX____ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Gloria M. Oates
2377 Gold Meadow Way, Ste. 215
Gold River, CA 95670